UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


Sandra S. Bell,                                    Case No. 3:15-cv-01609

           Plaintiff

v.                                              MEMORANDUM OPINION
                                                  & ORDER

Zurich American Insurance Company,

           Defendant


## I.    INTRODUCTION

Plaintiff Sandra Bell filed suit against the Zurich American Insurance Company for breach of contract and tortious failure to act in good faith. (Doc. No. 1). Zurich American did not file an answer or otherwise appear and, after the clerk of court entered default, I granted Bell's motion for default judgment. (Doc. No. 10). On November 18, 2015, I held a hearing to determine the appropriate amount of damages. For the reasons stated below, I conclude Bell is entitled to $146,979.50 in compensatory damages, $293,959.00 in punitive damages, and $5,000.00 in attorney fees.

## II.    BACKGROUND

Bell is a full-time, hourly sales associate with Macy's, Inc. Bell held an accidental death and dismemberment policy with Zurich American through Macy's, and her husband William was an "eligible Dependent" under the policy. (*See* Doc. No. 1-1 at 3). Employees may select coverage in an amount ranging from 1/2 to 10 times the amount of the employee's annual pay, which is the total of the employee's regular pay, overtime pay, cash bonuses, commissions, and other incentive pay

from the previous calendar year. (Doc. No. 1-1 at 3). This amount is referred to as the "Principal Sum." (Doc. No. 1-1 at 4). Bell elected to obtain an accidental death benefit of ten times her annual pay. (Doc. No. 1 at 2). The policy set William's benefit at 60% of his wife's Principal Sum. (Doc. No. 1-1 at 4).

In the early morning hours of February 15, 2014, William choked while taking a drink of water. He lost consciousness and fell. His head struck the floor and he developed a subdural hematoma, which led to his death on February 23, 2014. Following an autopsy, the Lucas County Coroner's office confirmed the subdural hematoma was caused by the fall and led to William's death. (Doc. No. 1-1 at 27-28).

William was a computer consultant who owned and operated his own business from his home office. He consulted with a number of local businesses and corporations, including the Dana Corporation, with whom he had a thirty-year relationship. (Doc. No. 13 at 6-7). At the time of his death, William was 69 years old and semi-retired; the couple had been married for over 13 years. (Doc. No. 8-1 at 2). William was the primary wage-earner for his family, earning approximately $2,100 per month from his consulting business and receiving approximately $1,900 in Social Security benefits. (Doc. No. 13 at 13-14). He also assumed responsibility for managing the couple's finances. Bell worked an average of 33 hours per week at Macy's and earned approximately $15 per hour. (Doc. No. 13 at 14).

Bell filed a proof of loss claim, along with a copy of the death certificate, with Macy's on May 29, 2014. Macy's sent the claim to Zurich American through the United Parcel Service on June 12, 2014. Zurich American acknowledged receipt of the claim on June 16, 2014. (Doc. No. 9 at 65). Bell spent several months seeking explanations from Zurich American as to the delay in processing her claim for benefits. After several months, Bell was able to contact the appropriate claims specialist, who informed her Zurich American was investigating the claim by compiling medical records and referring the claim to Dr. William Angell, a medical doctor specializing in thoracic and

2

cardiac surgery with whom it contracted. (Doc. No. 8-1 at 3; Doc. No. 9 at 44). Bell was told Dr. Angell's report would be completed by a certain date, but when Bell called after that date to get an update, the claims specialist stated she could not tell Bell what the report said. At that point, Bell retained counsel.[1] Bell subsequently was able to obtain a copy of the report and learned Dr. Angell had concluded the subdural hematoma was related to an underlying medical condition, and not the fall. Deaths caused by or resulting from illness or disease are excluded from coverage under the terms of the policy. (Doc. No. 1-1 at 50). Zurich American eventually relied on this policy exclusion to deny Bell's claim. (Doc. No. 9 at 27-28).

After reviewing the report, Bell notified Zurich American of several deficiencies in Dr. Angell's report: (1) the report falsely stated William's medical records only included one reference to his fall and (2) Zurich American provided Dr. Angell with only a fraction of the records from William's hospital stay preceding his death. (Doc. No. 9-1 at 17-20). Dr. Angell opined William's "underlying medical conditions and the medical treatment at the time of the admission was the cause of his subdural hematoma, which resulted in his collapse and subsequent death." (Doc. No. 9 at 48). Conversely, as both the county coroner and William's attending physician concluded William's fall at home – his collapse – caused the subdural hematoma and his death. (Doc. No. 9 at 42, 69). Bell's letter also noted Ohio law dictates that the county coroner's determination regarding the cause, manner, and mode of death "shall be the legally accepted manner[,] mode . . . [and] cause of death . . . ." (Doc. No. 9-1 at 19) (quoting Ohio Rev. Code § 313.19).

Zurich American formally denied Bell's claim on December 30, 2014, and Bell requested the claims file. While reviewing the file, Bell noticed it included references to doctors William did not see and conditions he did not have, as well as a prescription that was written and filled nearly three months after her husband's death. (Doc. No. 8-1 at 4). She subsequently discovered Zurich had provided Dr. Angell with the medical records of a different William E. Bell – who was alive and

---

[1] Counsel agreed to assist Bell with her claim, and accepted a 20% contingency fee – substantially less than the industry-standard of one-third – to do so. (*See* Doc. No. 13 at 3).

living in Briggsville, Kentucky – and only a fraction of the more than 2,000 pages of hospital medical records relating to William's care. (*See* Doc. No. 8-1 at 2; Doc. No. 9). Bell appealed the claim denial, stating Zurich American (1) wrongfully relied in part on another person's treatment records, (2) disregarded the county coroner's findings without explanation, (3) violated the Health Insurance Portability and Accountability Act of 1996, (4) had failed to provide previously-requested documents, and (5) had deleted intra-company communications from the claims file. (Doc. No. 9-1 at 4-5). Bell also noted the claims file contained no documents generated after her attorney challenged Dr. Angell's report on October 8, 2014 – despite Bell's identification of numerous errors and areas of concern in the report, as well as the claims specialist's assertions that the reason for the delay in processing Bell's claim was that the claim had to be reviewed by three committees and that the claims specialist would discuss the claim "with a committee of upper management." (Doc. No. 9-1 at 14).

Zurich American did not respond to Bell's appeal until April 2015, when it advised Bell's attorney it had decided to pay the claim. (Doc. No. 1 at 6). William's accidental-death benefit, calculated at 60% of Bell's Principal Sum for 2013, was $166,200. (Doc. No. 1 at 2). Zurich American issued a check to Bell on May 5, 2015, but underpaid the amount of benefits due by $13,850. (Doc. No. 1 at 6). After Bell objected, Zurich American issued the remaining amount a week later.

> Bell alleges:
>
> In doing the acts described in the complaint[,] defendant knew it would cause financial and emotional injury to plaintiff and carried out adjustment of her claim with a conscious disregard of her right to the proceeds of the policy, made misrepresentations to the plaintiff and her counsel and concealed material facts and evidence from plaintiff and her counsel with the intention of depriving her of the policy proceeds to which she is entitled. Zurich's Senior Claims supervisor[ ] knowingly created and participated in this misconduct, and such misconduct was taken without the authority given by Zurich American Insurance Company to this agent.

4

(Doc. No. 1 at 7). She also alleges Zurich American failed to process her claim in good faith (1) through its inadequate investigation, (2) through delay in investigating or paying the claim, (3) by forcing her to seek legal redress; (4) through deception and misrepresentation, (5) by attempting to use her financial vulnerability to force her to abandon her claim, (6) by underpaying the claim and failing to pay interest, and (7) by acting "in conscious disregard of the rights of its insured knowing that its conduct as heretofore set forth would have a great probability of causing her substantial harm, and did in fact cause such harm." (Doc. No. 1 at 9-10).

Due to her age, Bell is not yet eligible to receive survivor's benefits through Social Security. (Doc. No. 13 at 7). After William's death, Bell took on the responsibility of learning to manage her finances – a task William had fulfilled prior to his death. She had to make payments for her home's property taxes and insurance, on maintenance and utilities related to the house, on a car loan, on taxes related to William's business, and on William's medical bills resulting from his hospital stay. (Doc. No. 13 at 10). Bell confronted these tasks at the same time as two-thirds of the family's income had vanished. Bell sought accommodations, including payment plans and reductions in account balances, in an attempt to keep the debts from being referred to collections. (Doc. No. 11 at 12). One bill was referred to collections, though she was able to obtain an accommodation by showing her husband recently had passed away. (Doc. No. 13 at 13). Bell also took a $10,000 loan against her retirement account in order to pay medical bills. (Doc. No. 13 at 14-15). She faced these circumstances at a time Bell describes as "probably the worst time of [her] life." (Doc. No. 13 at 11). Instead of being able to rely on the coverage she had obtained for the purpose of protecting herself in the very circumstances underlying this case, Bell was forced to endure months of misrepresentations and misdirection before Zurich American fulfilled its side of the contract.

Bell seeks (1) reimbursement in the amount of $33,240 for legal fees she incurred in pursuing her claim for benefits through Zurich American's administrative process, (2) damages for emotional distress in the amount of $100,000, (3) at least $4,565 in interest, accumulating since

5

Macy's June 12, 2014 submission of the claim, (4) punitive damages in the amount of $3,000,000, and (5) attorney fees incurred in bringing this action. Zurich American was served with a copy of the complaint by certified mail on August 17, 2015. Zurich American did not engage counsel to enter an appearance or file an answer. The Clerk's office entered default on September 17, 2015, and I granted the plaintiff's motion for default judgment on October 16, 2015. (Doc. No. 6; Doc. No. 10). Though the Federal Civil Rules do not require this, a copy of the opinion and judgment entry granting the default judgment were sent by United States mail to Zurich American on October 19, 2015.

### III. STANDARD

When the amount of damages to be awarded pursuant to a default judgment is uncertain, the court must make further inquiry. Fed. R. Civ. P. 55(b)(2). It may do so through oral testimony at an evidentiary hearing, or through the submission of affidavits and other materials. There is no right to a jury trial on a request for a default judgment, or as a manner of disputing damages following the entry of a default judgment. 10 Moore's Fed. Prac., § 55.32[2][e]. "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. Pro. 54(c). A plaintiff must prove compensatory damages to a reasonable degree of certainty by a preponderance of the evidence. *See Anderson v. Wade*, 33 F. App'x 750, 756 (6th Cir. 2002). The plaintiff has the burden of showing punitive damages are appropriate by clear and convincing evidence. Ohio Rev. Code § 2315.21(D)(4).

### IV. ANALYSIS

#### A. COMPENSATORY DAMAGES

Bell seeks compensatory damages for Zurich American's breach of contract and breach of its duty to act in good faith. She seeks (1) legal fees in the amount of $33,240 incurred in disputing the denial of her claim, (2) $100,000 in damages for emotional distress, (3) interest in the amount of

$4,565 as a result of Zurich American's delay in paying her claim, and (4) $10,000 for the loan she took against her retirement account.

"[A]n insurer fails to exercise good faith in the processing of a claim of its insured where [the insurer's] refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor." *Zoppo v. Homestead Ins. Co.*, 644 N.E.2d 397, 400 (Ohio 1994) (quoting *Staff Builders, Inc. v. Armstrong*, 525 N.E.2d 783, 788 (Ohio 1988)). The insurer's duty to evaluate claims in good faith extends beyond outright denials of payment, and insureds may pursue a bad-faith cause of action even when the insurance claim ultimately is paid. *Drouard v. Unit. Servs. Auto. Ass'n*, 2007-Ohio-1049, 2007 WL 707532, at *2 (Ohio Ct. App. March 9, 2007). An insurer who breaches this duty "is liable for those compensatory damages flowing from the bad faith conduct of the insurer . . . ." *Zoppo*, 644 N.E.2d at 402; *see also Furr v. State Farm Mut. Auto. Ins. Co.*, 716 N.E.2d 250, 265 (Ohio Ct. App. 1998). I conclude Bell's allegations, which Zurich American is deemed to admit through its failure to deny them, establish that Zurich American breached its duty to act in good faith, and it is liable to Bell for compensatory damages in the amount of $100,000 for emotional distress and $10,000 for the loan against her retirement account.

An insured who prevails on a bad-faith claim also may recover attorney fees as a measure of compensatory damages. *TOL Aviation, Inc. v. Intercargo Ins. Co.*, 2006-Ohio-6061, 2006 WL 3334556, at *13 (Ohio Ct. App. Nov. 17, 2006); *see also Brown v. Guarantee Title & Trust / ARTA*, 1996 WL 488004, at *4 (Ohio Ct. App. Aug. 28, 1996) ("[I]n such an action, the attorney's fees are an economic loss – damages – which flow from and are proximately caused by the insurer's bad faith."). When she obtained counsel to assist her in disputing Zurich American's denial of her claim, Bell agreed to pay her attorney 20% of any benefits she received. Bell incurred these attorney fees as the result of Zurich American's bad-faith handling of her claim, and I conclude she is entitled to the $33,240 in attorney fees as compensatory damages.

7

Under Ohio law, a party who is entitled to money pursuant to a contract also is entitled to interest beginning at the time the "money becomes due and payable." Ohio Rev. Code § 1343.03(A). The accidental-death policy states Zurich American will pay a claim for a covered loss "immediately upon receipt of written proof of loss that is acceptable to Us." (Doc. No. 1-1 at 20). Zurich American's designee completed its factual investigation by August 15, 2014, and it is at this date that Zurich American reasonably should have obtained the necessary evidence to conclude William's death was the result of an accident and therefore was a covered loss. (Doc. No. 1 at 3). Zurich American did not pay Bell's claim in full until May 12, 2015, nine months after the policy obligated it to pay the claim. (Doc. No. 1 at 7). The prejudgment interest rate between January 1, 2012, and December 31, 2015 is 3% annually. *See* clerk.franklincountyohio.gov/docs/civil/Statutoryinterestnotice2015.pdf. Therefore, I conclude Bell is entitled to prejudgment interest in the amount of $3,739.50.[2]

In total, Bell is entitled to $146,979.50 in compensatory damages.

**B. PUNITIVE DAMAGES**

Under Ohio law, a plaintiff may recover punitive damages for an insurer's breach of its duty of good faith only if (1) the defendant's actions or omissions demonstrate malice and (2) the plaintiff has produced proof of actual damages arising from those acts or omissions. Ohio Rev. Code § 2315.21(B); *see also Zoppo*, 644 N.E.2d at 402. Malice is defined as "(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revent, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *Preston v. Murty*, 512 N.E.2d 1174, 1174 (Ohio 1987) (syllabus). If a plaintiff seeks punitive damages through the conscious-disregard theory, she must show "a positive element of conscious wrongdoing. This element has been termed conscious, deliberate[,] or intentional. It requires the party to possess knowledge of the harm that might be caused by his behavior." *Malone v. Courtyard by*

---

[2] $166,200 times 0.0025 times 9 months. Three percent annually equates to 0.25 percent each month.

8

*Marriott, L.P.*, 659 N.E.2d 1242, 1247-48 (Ohio 1996) (quoting *Preston*, 512 N.E.2d at 1176). There must be proof of the defendant's "subjective knowledge of the danger posed to another." *Malone*, 659 N.E.2d at 1248.

Under Rule 8, Zurich American is deemed to have admitted Bell's allegations concerning its conscious disregard for her rights. Fed. R. Civ. P. 8(b)(6). Bell alleges Zurich American knew it would cause her substantial harm when it "carried out adjustment of her claim with a conscious disregard of her right to the proceeds of the policy, made misrepresentations to [her] and her counsel[,] and concealed material facts and evidence from plaintiff and her counsel with the intention of depriving her of the policy proceeds to which she is entitled." (Doc. No. 1 at 7). The Supreme Court of Ohio has concluded an insurer consciously disregards its insured's rights, and a punitive damage award against the insurer is justified, when the insurer breaches "its affirmative duty to conduct an adequate investigation" by conducting "a one-sided inquiry" that fails to adequately review or develop evidence concerning the claim. *Zoppo*, 644 N.E.2d at 402. Zurich American's conduct – in particular its decisive reliance on medical records for a demonstrably-alive individual during the investigation of an accident-death claim and its failure to conduct any investigation in response to Bell's identification of numerous errors in Dr. Angell's report – demonstrates a conscious disregard of Sandra's rights and establishes a great probability of causing substantial harm. This conduct justifies an award of punitive damages.

Ohio has instituted a cap on punitive damages: a court may not award punitive damages in excess of two times the amount of compensatory damages awarded to the plaintiff by the trier of fact from a particular defendant. O.R.C. § 2315.21(D)(2). Bell contends this damages cap does not apply in this default judgment proceeding, because the cap is tied to a "trial" and a hearing is not the same as a trial under Ohio law. (Doc. No. 12-1). I conclude the statutory damages cap applies and limits the punitive damages award to two times the amount of compensatory damages.

9

In diversity cases involving state law issues such as this one, federal courts "must apply the law of the state's highest court." *Garden City Osteopathic Hosp. v. HBE Corp.*, 55 F.3d 1126, 1130 (6th Cir. 1995) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938)).  If there is no controlling authority from the state supreme court, an appellate court decision announcing a rule of law may not be disregarded unless other persuasive data convinces the federal court that the state supreme court would decide the case differently.  *Mich. First Credit Union v. Cumis Ins. Soc., Inc.*, 641 F.3d 240, 252 (6th Cir. 2011) (quoting *FL Aerospace v. Aetna Cas. & Sur. Co.*, 897 F.2d 214, 218-19 (6th Cir. 1990)).

While the Supreme Court of Ohio has not addressed the applicability of Ohio Revised Code § 2315.21 in the context of the assessment of damages following entry of a default judgment, an Ohio appellate court has faced a substantially similar situation.  In *Doepker v. Willo Security, et al.*, 2008-Ohio-2008, 2008 WL 1850970 (Ohio Ct. App. Apr. 7 2008), the trial court granted the plaintiff's motion for a default judgment against the defendants, who failed to file an answer after having been properly served with the complaint.  *Id.* at *1.  The plaintiff had been shot by Kevin Johnson, who was employed as a private security guard by Willo Security.  The plaintiff suffered permanent quadriplegic paralysis, among other injuries, as a result of the shooting.  *Id.*  The trial court awarded over $34 million in compensatory damages and $18 million in punitive damages against the defendants, with joint and several liability.  *Id.* at *2.  The defendants, who had miscalculated the answer deadline and appeared at the damages hearing to dispute the plaintiff's damages claim, appealed.

On appeal, Johnson argued Ohio Revised Code § 2315.21(D)(2)(b) limited the amount of punitive damages which could be assessed against him.  That subsection limits punitive damage awards against small employers or individuals to the lesser of two times the amount of compensatory damages awarded against that defendant or 10 percent of the defendant's net worth, up to a maximum of $350,000.  Ohio Rev. Code § 2315.21(D)(2)(b).  The *Doepker* court concluded the amount of the punitive damage award was permissible because it did not exceed the "two times"

10

cap, and Johnson did not present evidence regarding his net worth at the time the shooting occurred. *Doepker*, 2008 WL 1850970 at *5-6. Implicit in the court's rejection of Johnson's argument is the necessary conclusion that § 2315.21 applies to a punitive damage award resulting from a plaintiff's motion, and is not limited to damage awards entered following a trial on the merits of the plaintiff's claims. Therefore, I conclude § 2315.21(D)(2)(a) limits the punitive damage award against Zurich American to two times the compensatory damages award, or $293,959.

### C. ATTORNEY FEES

A plaintiff who is entitled to punitive damages also may recover reasonable attorney fees incurred in bringing the action. *Columbus Fin., Inc. v. Howard*, 327 N.E.2d 654, 658 (Ohio 1975). Plaintiff's counsel states he spent over 20 hours preparing the complaint, motion for default, and motion for default judgment, at a rate of $250 per hour. (Doc. No. 8-2 at 4). Counsel, who has practiced law for over 40 years, requests $5,000 in attorney fees. (Id.). I conclude the amount of this request is reasonable and award Bell $5,000 in attorney fees.

### V. CONCLUSION

For the reasons stated above, I conclude the plaintiff has carried her burden of proof regarding compensatory and punitive damages, as well as attorney fees. I award Sandra Bell $146,979.50 in compensatory damages, $293,959 in punitive damages, and $5,000 in attorney fees.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge